O'CONNOR v. ATCHISON, T. & S. F. RY. CO.

(District Court, D. New Mexico. June 11, 1912.)

No. 114.

*(Syllabus by the Court.)*

1. RAILROADS (§ 282*)—OPERATION—INJURIES—QUESTIONS FOR JURY—CONTRIBUTORY NEGLIGENCE.

Applying the rule that a peremptory instruction should not be given the jury when the evidence is conflicting or where divergent inferences therefrom may be drawn by reasonable minds, the question of contributory negligence, under the facts of the present case, was for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 910–923; Dec. Dig. § 282.*]

*(Additional Syllabus by Editorial Staff.)*

2. RAILROADS (§ 282*)—OPERATION—INJURIES TO PERSONS ON TRACKS—SUFFICIENCY OF EVIDENCE.

In an action against a railroad for causing the death of a servant of a tie company which was loading cars, while he was passing between cars, evidence *held* to justify the jury in holding defendant guilty of negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 910–923; Dec. Dig. § 282.*]

At Law. Action by Charles O'Connor, by next friend, against the Atchison, Topeka & Santa Fé Railway Company. Verdict for plaintiff for $5,000. On motion for a new trial. Denied.

Marron & Wood, of Albuquerque, N. M., for plaintiff.

R. E. Twitchell, of East Las Vegas, N. M., for defendant.

POPE, District Judge. The only point argued upon the motion for a new trial is the allegation of error by the court in failing to instruct the jury to find for the defendant.

The two controlling questions in the case were: First, was the defendant negligent? Second, if so, was the deceased likewise guilty of negligence, contributing to his death?

[2] Upon the first of these there was ample evidence from which the jury was justified in holding the defendant guilty. The situation, briefly stated, is as follows: Two cars were standing at as many chutes being loaded with ties. There was about three feet between these cars. Under the system of loading pursued, the cars when loaded were to be pushed down the track by hand to join cars previ-

ously loaded, which latter, when aggregating a sufficient number, were taken out by one of defendant's locomotives, which was coupled on to the loaded cars for that purpose. The locomotive had no relation to the cars in process of loading. These latter were to stand unmolested until loaded and even then to be moved, not by the locomotive, but by hand. The deceased, who was foreman for the tie company and in charge of the work of loading, desired to go from the vicinity of the chutes to the opposite side of the track. The purpose for which he was going is not shown by the proofs.' It may have been to inspect the work of loading from that side of the cars, as was entirely proper, or it may have been to go to his house, which was situated in that direction, which was equally proper. In going from the chutes he might have gone around the end of the cars, or across them, or under them, or between them. To have done the first would have not only involved considerable distance, but would have involved his going under the string of ties which was being introduced from the river through the chutes and into the two cars. This would have involved his getting wet and also have involved some danger from the ties above his head. To have gone over the cars would have necessitated his encountering the operation of loading there going on, which included the discharge of ties at a rapid rate into the cars. As between going under the cars or between them he chose the latter. While so going defendant's locomotive was driven against the loaded cars, some seven in number, which were standing about 30 feet from the nearest car being loaded, with such force that the loaded cars were driven through this intervening distance of 30 feet, against the nearest car being loaded, which latter in turn was driven against the other car being loaded next north with such force as that these two cars were thrown together and coupled to each other through deceased's body, resulting in his death. The evidence is conflicting as to whether the bell of the locomotive was being rung and the whistle blown as the engine approached the loaded cars. But, even if both of these were done, the jury were justified in believing that defendant had not fully discharged the duty which the situation put upon it. The parties engaged in and about the loading might well have considered the bell and whistle, if used, simply as notice that the engine was about to couple to and take out the loaded cars, not that it was about to kick these latter 30 or more feet against the two cars upon and about which men were busily engaged in receiving ties from the chutes. If defendant's employés saw that it was for any reason necessary or inevitable that the train should come in contact with the cars being loaded, those working upon the latter were entitled to more specific notice than the ringing of the bell or blowing of the whistle. Ordinary prudence would seem to have suggested a warning to the men on or about the cars by one of the train crew as the train was being shoved up against the two cars at the chutes. There is no pretense that any such notice was given.

[1] This brings us to a consideration of the second question, and it is upon this that the defendant apparently principally relies: That

197 F.—15

the act of deceased in going between the cars was, as a matter of law, such negligence contributing to the injury as debars recovery. The duty imposed upon the deceased was that of ordinary care for his safety, the care that a reasonably prudent man would exercise under such circumstances. Whether such reasonable care is used is ordinarily a question for the jury, and a court may not properly give a peremptory instruction in favor of the defendant where the evidence on an issue of contributory negligence is conflicting or where divergent inferences therefrom may be drawn by reasonable minds. Empire State Co. v. Atchison Co., 210 U. S. 1, 28 Sup. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70. Viewing the matter in the light of all the proofs, it was a question for the jury as to whether the deceased should, in going across the track, have gone between the cars or have taken one of the other methods of getting east of the track, above indicated. It must be recalled that the situation was not one in which the injured person went between cars which he had reason to believe might at any moment be moved, but between cars which he had every reason to believe would be left untouched by defendant's locomotive. Even if, under such circumstances, the duty to look and listen rested upon him as in crossing cases, where the coming of a train may be reasonably expected, the application of such a rule does not establish contributory negligence against deceased. The record is silent as to whether deceased did look and listen, and under such circumstances the presumption is that he did. De Padilla v. Atchison, T. & S. F. R. Co. (N. M.) 120 Pac. 724, and cases cited. Assuming, therefore, that he looked and listened, the circumstances were not such that he must necessarily have seen or heard the locomotive and loaded cars backing toward him. The obstructions resulting from the chutes and the incoming ties interfered with a view in the direction of the engine. The plats in evidence indicate that there was a bend in the track eastward so that the engine at the south end of the loaded cars was not visible from the vicinity of the chutes, where deceased was standing. The confusion resulting from the stationary engine which was operating the discharge of ties from the river into the cars at the chutes, together with the noise of the latter, tended to prevent deceased from hearing the approach of the locomotive from the south. Under all the circumstances, the issue of contributory negligence impresses me in this case as having been one peculiarly for the jury. With the conclusion of the jury, that there was no contributory negligence, the court has no fault to find.

The motion for a new trial is, accordingly, denied.